UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF ILLINOIS


UNITED STATES OF AMERICA,          )
                                   )
                  Plaintiff,       )
V.                                 )  No. 3:19-cr-30167-SMY-1
                                   )
EARL G. RICE, JR.,                 )
                                   )
                  Defendant.       )



TRANSCRIPT OF SENTENCING PROCEEDINGS

BEFORE THE HONORABLE STACI M. YANDLE
UNITED STATES DISTRICT JUDGE

February 25, 2022










REPORTED BY:        Christine Dohack LaBuwi, RDR, CRR
                    Official Court Reporter
                    301 West Main Street
                    Benton, Illinois  62812
                    (618) 439-7725
                    Christine_Dohack@ilsd.uscourts.gov

Proceedings recorded by mechanical stenography, produced by
computer-aided transcription.

```
 1   APPEARANCES:

 2   FOR PLAINTIFF:        Alexandria M. Burns, Esq.
                           Karelia S. Rajagopal, Esq.
 3                         OFFICE OF THE U.S. ATTORNEY
                           9 Executive Drive, Suite 300
 4                         Fairview Heights, IL  62208
                           (618) 628-3700
 5                         alexandria.burns@usdoj.gov
                           karelia.rajagopal@usdoj.gov
 6

 7   FOR DEFENDANT:        Earl G. Rice, Jr., Pro Se
                           MONROE COUNTY JAIL
 8                         225 E. 3rd Street
                           Waterloo, IL 62298
 9
                           Daniel G. Cronin, Esq., Standby Counsel
10                         FEDERAL PUBLIC DEFENDER
                           650 Missouri Avenue, Suite G10A
11                         PO Box 159
                           East St. Louis, IL  62201
12                         (618) 482-9050
                           Dan_Cronin@fd.org
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Proceedings began in open court at 9:30 a.m.)

 2          COURTROOM DEPUTY:  The Court calls Case No.

 3   19-CR-30167, *United States of America versus Earl G. Rice,*

 4   *Jr.*  This matter is called for sentencing.

 5          Would the parties please state your presence for

 6   the record?

 7          MS. BURNS:  Ali Burns on behalf of the United

 8   States.  Good morning.

 9          THE COURT:  Good morning, Miss Burns.

10          MS. RAJAGOPAL:  Good morning, Your Honor.  Karelia

11   Rajagopal on behalf of United States.

12          THE COURT:  Good morning, Miss Rajagopal.

13          Mr. Rice?

14          THE DEFENDANT:  I'm here.

15          THE COURT:  Could you state your presence for the

16   record, please?

17          THE DEFENDANT:  My name?

18          THE COURT:  Yeah.

19          THE DEFENDANT:  Earl Rice.

20          THE COURT:  The record reflect that Mr. Rice is

21   present and is representing himself pro se.

22          Mr. Cronin?

23          MR. CRONIN:  Good morning, Your Honor.  Dan Cronin

24   of the Federal Public Defender's Office present as standby

25   counsel for Mr. Rice.

1        THE COURT:  Good morning, Mr. Rice, again.

2        Good Morning, Mr. Cronin.

3        The record should also reflect United States

4   Probation Officer Kristi Miller is present.

5        All right.  Counsel and Mr. Rice, I have reviewed

6   all of the sentencing-related filings in this case, which

7   would include the Presentence Investigation Report.  The

8   most recent version was revised on February 22nd, 2022.

9        I have also reviewed the Government's written

10  Sentencing Memorandum.

11       Does the Government have any additional filings or

12  documents for my review this morning?

13       MS. BURNS:  No, Your Honor.

14       THE COURT:  Mr. Rice, do you have any additional

15  filings or documents for my consideration for sentencing

16  purposes this morning?

17       THE DEFENDANT:  Well, because I have raised the

18  issue of the Court's lack of jurisdiction, I can't reach

19  the merits.  So, I have nothing to say on that.

20       THE COURT:  So, you have nothing additional for my

21  consideration; correct?

22       THE DEFENDANT:  Not today.

23       THE COURT:  Okay.

24       THE DEFENDANT:  I have some objections I'd like to

25  get on the record, though.

1          THE COURT:  Objections to what, sir?

2          THE DEFENDANT:  Well, the first objection is to the

3  case proceeding because of 1(A), the first prerequisite of

4  the United States Territorial Jurisdiction --

5          THE COURT:  No, sir.

6          THE DEFENDANT:  -- over place --

7          THE COURT:  No, sir.  Mr. Rice?  Mr. Rice?

8          THE DEFENDANT:  You don't want to hear my grounds?

9          THE COURT:  Mr. Rice?  Today is your sentencing.

10  Okay?  Any objections you have should be confined to any

11  objections you have to the Presentence Investigation

12  Report, to the Court's calculation of the guidelines, to

13  the Proposed Conditions of Supervised Release.

14          Your jurisdictional arguments, as we went through

15  this several times during -- during -- before and during

16  your trial, your jurisdictional arguments have been

17  repeatedly noted, repeatedly addressed by the Court.  You

18  will have a chance to raise them on appeal.  But this is

19  not the -- this is not the forum or an opportunity for us

20  to revisit your jurisdictional arguments.  We are not going

21  to do that today.

22          THE DEFENDANT:  Okay.

23          THE COURT:  Oral arguments, statements, objections,

24  and positions should be confined to the question of

25  sentencing.  That's it.

1    I will give you every opportunity to respond,

2    address, object, to matters of sentencing. But that's all

3    we're going to do today.

4        THE DEFENDANT: Well, can I ask you something?

5        THE COURT: Sure.

6        THE DEFENDANT: Well, Daniel Cronin is here. And

7    in this first page of the Presentence Investigation Report,

8    he's listed as my defense counsel. Now, I would like to

9    raise an objection to Mr. Cronin.

10       Under the local rules of this court, I can bring to

11   your attention Rule 83.2 --

12       THE COURT: You don't need to go there. We don't

13   need to go there. You are correct. Mr. Cronin is not your

14   defense counsel. That is a -- that is inaccurate. That's

15   a mistake in the drafting of the PSR.

16       I'm going to order Probation to revise the cover

17   page of the PSR after this proceeding to reflect that, in

18   fact, Mr. Cronin is standby counsel only. So, that is --

19   that is a misprint on the PSR.

20       The Court is clear that you are representing

21   yourself. The Court and the record are clear that Mr.

22   Cronin is standby counsel only. Only.

23       THE DEFENDANT: Have I entered on the record pro

24   se?

25       THE COURT: Oh, yes. You have been pro se for at

1  least a year and a half.

2  THE DEFENDANT: I have made some pro se filings --

3  THE COURT: No. No. No. No, sir.

4  THE DEFENDANT: -- but I haven't entered on the

5  record.

6  THE COURT: No, sir. When you decided you wanted

7  to represent yourself, we had an entire hearing where I

8  questioned you about that. And at the end of that, I said

9  that I found that you are competent to represent yourself

10 and that you, in fact, had exercised your right of

11 self-representation and you were representing yourself for

12 the remainder of this proceeding.

13 That was at the same time that I appointed Mr.

14 Cronin as standby counsel only.

15 The record is clear, sir, that you have been pro se

16 for a year and a half, and you are pro se today. There is

17 no question about the record. You don't need to make a

18 record.

19 THE DEFENDANT: Well, the word, phrase, or term --

20 THE COURT: Mr. Rice? Mr. Rice? I think I told

21 you, we're not doing this. We are going to proceed with

22 sentencing. So, would you please stand, sir?

23 THE DEFENDANT: (Complies.)

24 THE COURT: As I mentioned to you, Mr. Rice,

25 Probation prepared and filed a Presentence Investigation

Report to assist me in sentencing you in this case. The initial report, I believe, was filed on January 21st, 2022. It was revised on February 22, 2022.

And the purpose of the revision as stated, attached to the report, was simply to correct the typographical error that appeared in paragraph 14. In other words, that the year of the relevant conduct was referred to as 2008. It was corrected to the year 2018.

And in paragraph 82, to state what the actual statutory maximum sentence as to Counts 2 and 3 is, which is 360 months.

Sir, did you receive the PSR?

THE DEFENDANT: I believe I got three copies of it.

THE COURT: Okay. And have you had a sufficient opportunity to review the PSR?

THE DEFENDANT: No.

THE COURT: Why not?

THE DEFENDANT: Like I stated at the beginning of this proceeding, I can't get past the Court's lack of jurisdiction. I can't reach the merits.

THE COURT: No. No. No. That wasn't my question. My question was not whether you refuse to read it. My question was, have you had an opportunity to read it? In other words -- so, you have not read the PSR?

THE DEFENDANT: No.

1    THE COURT:  And you have not read the PSR by

2  choice; is that correct?

3    THE DEFENDANT:  I'll agree with that.

4    THE COURT:  Okay.  All right.  You can be seated.

5    THE DEFENDANT:  (Complies.)

6    THE COURT:  The Court does note that no objections

7  have been made to the Presentence Investigation Report by

8  either the Government or by Mr. Rice.

9    As a result, I adopt the report and the findings

10 contained in the report and calculate the following

11 guideline range:

12    Counts 1, 2, and 3 are grouped for guideline

13 calculation purposes.

14    The guideline for a violation of 18 U.S.C., Section

15 2251(a), provides a base offense level of 32.

16    Because the offense did involve a minor who had

17 attained the age of 12 but not attained the age of 16,

18 there's a two-level increase under Section 2G2.1(b)(1)(B)

19 of the Sentencing Guidelines.  The victim in this case was

20 13 years of age at the time of the offense.

21    There is an additional two-level increase under

22 Section 2G2.1(b)(2) as the defendant and the victim did

23 engage in sexual intercourse on at least two occasions.

24    There is an additional two-level enhancement or

25 increase under Section 2G2.1(b)(6)(B) as the offense

involved the use of a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct.  In this case, the defendant used his cell phone to send the victim messages about meeting and engaging in sexual relations.

There is an Enhancement under Chapter Four specifically, Section 4B1.5(b)(1), as the defendant engaged in a pattern of activity involving prohibited sexual conduct, therefore, the defendant is a repeat and dangerous sex offender against minors.  In this case, the defendant engaged in sexual intercourse with the minor on two separate occasions between February 14 and 15, 2018, and he also produced two images of child pornography.

The total offense level in this case is 43.

The defendant's criminal history category is six.

As a result, the guideline range for imprisonment on Count 1 is life.

The guideline range for imprisonment as to Counts 2 and 3 is 360 months.

The guideline range for supervised release on Counts 1, 2, and 3, is five years to life.

The fine range is 50,000 dollars to 250,000 dollars.

The Special Assessment is 300 dollars total, which

1    is 100 dollars per count.

2           As far as the additional Special Assessment under

3    18 U.S.C., Section 3014, the 5,000-dollar Special

4    Assessment.  The Court does find that this defendant is

5    indigent and does not have the ability to pay that

6    additional Special Assessment and it will not be imposed.

7           Forfeiture is involved with respect to a Nokia

8    Lumia 635 cell phone bearing Serial No.

9    f0ed24b442e9f0e50336066ae1f20279, and a Nokia 635 -- I'm

10   sorry -- 6350 cell phone bearing IMEI No. 355969042786894.

11          Does the Government have any objections to my

12   calculations?

13          MS. BURNS:  No, Your Honor.

14          THE COURT:  Mr. Rice, do you have any objections to

15   the Court's calculation of the sentencing guidelines beyond

16   your jurisdictional arguments?

17          THE DEFENDANT:  I can't reach the merits, ma'am,

18   so, no.

19          THE COURT:  Okay.  As it relates to departures.

20   While departures from the guideline range may be available,

21   I do not intend to depart for any reason that is noted in

22   the guidelines manual.

23          I will consider whether any variance from the

24   guidelines is warranted, and that would be in conjunction

25   with my consideration of the statutory factors set forth at

1   18 U.S.C., Section 3553(a).  I'm required to consider and

2   weigh those factors in order to ensure that I impose a

3   sentence which is sufficient, but not greater than

4   necessary, to comply with the purposes of sentencing.

5   These purposes include the need for the sentence to reflect

6   the seriousness of the crime, to promote respect for the

7   law, and to provide just punishment for the offense.  The

8   sentence should also deter criminal conduct, protect the

9   public from future crimes by this defendant, and promote

10  rehabilitation.  In addition to the guidelines and policy

11  statements, I must also consider and weigh:

12          The nature and circumstances of the offense;

13          The history and characteristics of this defendant;

14          The need to avoid unwarranted sentence disparities

15  among similarly-situated defendants; as well as,

16          The types of sentences available.

17          With that, Miss Burns -- will you be speaking to --

18  on the Government's behalf?

19          MS. BURNS:  Yes, Your Honor.  Would you like me to

20  approach the podium?

21          THE COURT:  Sure.

22          MS. BURNS:  Okay.

23          THE COURT:  What is the Government's position on

24  the application of the statutory factors and the

25  Government's sentencing recommendation?

MS. BURNS:  Your Honor, the Government's recommending a total sentence 40 years.  And I submitted a Sentencing Memorandum laying out much of, you know, obviously, the Court sat through this trial and the facts surrounding that.  But there were a few things that I wanted to highlight that I think support a sentence of 40 years as being sufficient, but not greater than necessary, in this case.

In starting with, specifically, the fact that this case went to trial.  I think it's really important to note that while Mr. Rice did not cross-examine the victim, and I do think that, you know, was to the victim's benefit to not have to engage with Mr. Rice under these circumstances, it still didn't remove the fact that she had to walk into a room full of adult strangers in a place she had never been, in a room with Mr. Rice again, and talk about what happened that night.  And I think that is something that is very difficult.  You know, it would be difficult for adults to do.  But to have a child do that, I think the weight of that can't be overstated.

And I think it's also important to note that, you know, after this happened in 2018, the victim dealt with a lot of trauma that was, you know, reopened or aggravated based on her encounter with police, the things that happened that night, and had to receive treatment for a

couple weeks after that, inpatient treatment.

Luckily, after that, she started doing much better. And I think that is a really important fact and something that, you know, she is very proud of, and her family is very proud of. But coming back to something like this, to talk about this again, again, in a setting with a bunch of strangers and to kind of have to open old wounds at that point is something that's very difficult and did have an impact on her afterwards. I think her mom had a lot of concern about her just kind of closing up again and kind of reverting back to where she was in 2018. So, I do think that that's really important.

And when we consider the nature and circumstances of this offense, and the seriousness of this offense, is that that's part of that consideration, of that impact it had on this victim.

I think that another part of the nature and circumstances of this offense is the fact that Mr. Rice has not taken any responsibility for his actions. I think that we saw that play out, not just through the trial but well before that. And the reason that I bring that up is, it's especially notable to me that in his numerous interviews with police, he plays games, I mean, to put it simply.

He concedes on things that he absolutely has to, because they're confronting him with things that he can't

talk hisself out of. But he continues through those
numerous interviews to deny or make up excuses or try to
play these games to avoid what they're confronting him
with. And even after his final interview with police
where, you know, when confronted with actual images on his
phone, so now he could no longer just say that, *Oh, I
picked up this 13-year-old girl and we sat in a hotel room
all night and she just laid on the couch and we watched TV,
or laid on the bed and watched TV.* Once he was confronted
with images of the victim on his phone, he came up with,
*She wanted me to take those pictures to send to her own
phone so she could have them.* He's always kind of
manipulating that situation to work for him.

And I think it's notable that, even at the end of
that final interview, he still denied that he ever had any
sexual contact with the victim. Which, obviously, we find
out at a later date, not only had the victim said was not
true, but DNA evidence disproved.

So, I think that kind of behavior plays into not
just the seriousness of this offense but the need to
promote a respect for the law. And I think it just shows a
continuous pattern in Mr. Rice's life, notably started
later in his life, in his 40s, really, with this engagement
with law enforcement and these games.

If you look at his criminal history and his priors,

while not all of them are necessarily the most serious of offenses, it always involves, you know, kind of changing the facts to fit how he wants this narrative to play. You know, in instances where he is combative with police or kind of telling police different stories. And so, I think that's something important to consider.

I also think that, you know, he has -- when he is arrested related to this case -- he's a convicted felon. He's previously been convicted related to gun offenses, and he's found with, you know, numerous guns. And that wasn't the first time that had happened. There were prior instances where he had been charged with gun possessions related to him being prohibited, or some other prohibiting factor. And so, it just again shows this consistent ability or disability to comply with the law and respect the law.

And finally, I think in looking at the 3553(a) factors and the need to adequately deter not just him but others like him, you know, we, in this court, deal with many types of offenses involving child victims, and those range from one far end to the other. And I think it's pretty widely accepted that a hands-on offense is the worst of those. I mean, somebody who's actually acting on those. And that's what we have here.

And I think a significant sentence of 40 years,

1  which I understand is a very significant sentence, is
2  necessary to not just deter Mr. Rice from continued
3  disrespect for the law, but also others like him, to send
4  that message that this type of behavior will not be
5  tolerated and it will be met with serious consequence if
6  it's -- if somebody does this.
7         So, at the end of the day, the Government believes
8  that a 40-year sentence is appropriate in this case and
9  it's sufficient, but not greater than necessary.
10        And finally, we would also ask for lifetime
11 supervised release.
12        Thank you.
13        THE COURT:  Thank you, Miss Burns.
14        Mr. Rice, you now have an opportunity to address
15 the application of the statutory sentencing factors and
16 goals that I detailed, as well as to make any statement on
17 your own behalf as it relates to the imposition of a
18 sentence in this case.
19        Anything you'd like for me to consider in imposing
20 sentence?  You may -- I'll ask the marshals to bring you to
21 the podium.
22        THE DEFENDANT:  Ma'am?  If I could find a
23 constitutional court of proper venue, I would argue with
24 the Supreme Court --
25        THE COURT:  Mr. Rice, I'm not interested in your --

1    THE DEFENDANT:  I would argue --

2    THE COURT:  I'm not interested in your

3  jurisdictional thoughts.

4    THE DEFENDANT:  -- with the Supreme Court --

5    THE COURT:  I'm not interested in your

6  jurisdictional thoughts.

7    THE DEFENDANT:  This goes to --

8    THE COURT:  No.  No.

9    THE DEFENDANT:  This goes to the --

10    THE COURT:  No.  No.  No.  You may make a statement

11  as to the application of the factors set forth in 18

12  U.S.C., Section 3553(a), as the Government had an

13  opportunity to do.  You may make a statement as to the

14  application of the goals of sentencing.  You may make an

15  allocution.

16    What you are not going to do is to get up on your

17  jurisdictional soapbox.  We've had this battle throughout

18  this case.  I have ruled on your jurisdictional arguments.

19  I understand your stated position is, you can't get to

20  anything else in this criminal proceeding because you can't

21  get to the Court's jurisdiction.  Okay.  You don't have to

22  get to the Court's jurisdiction.  The Court has

23  jurisdiction.

24    But what we're not going to do is to continue to

25  entertain those arguments.  You are not required to make

any statement as it relates to the application of the
factors set forth at 18 U.S.C., Section 3553(a), or the
application of the objectives of sentencing in your case,
or an allocution.  You have an opportunity but, like other
opportunities, you can decline.  But I'm not going to give
you an audience for your jurisdictional arguments today.

Now, do you have a statement that you'd like to
make to address the application of the factors set forth at
18 U.S.C., Section 3553(a)?  I'm happy to repeat them, or
the sentencing objectives.  I'm happy to repeat those for
you.

THE DEFENDANT:  If I can't continue my first
statement, then I have no further -- nothing further to
say.

THE COURT:  Okay, then could you please stand where
you are?

THE DEFENDANT:  (Complies.)

THE COURT:  The record would reflect that, again,
Mr. Rice is representing himself and, as such, was given
ample opportunity to address the statutory factors at 18
U.S.C., Section 3553(a), as it relates to sentencing and
the objectives of sentencing, that I detailed them on the
record today, and also informed him of his opportunity to
make an allocution.

Mr. Rice stands on his position that if the Court

1    will not allow him to address his jurisdictional arguments,
2    that he has nothing else to say.
3          That being the case, the Court is prepared to
4    proceed with the imposition of a sentence in this case.
5          As to the factors that I am to consider and weigh,
6    beginning with the nature and circumstances of the offense.
7    Suffice it to say, Mr. Rice's offense conduct for which he
8    was convicted of the enticement of a minor, travel with
9    intent to engage in illicit sexual conduct and sexual
10   exploitation of the minor, those are some of the most
11   serious offenses as it relates to the exploitation of
12   minors that exist under our federal law.
13         The nature and circumstances of his specific
14   offenses is reprehensible.  And there are many other
15   adjectives we can add to it.  We all sat through those
16   details -- or the Court sat through those details in trial.
17   They are detailed in the PSR.
18         Mr. Rice enticed a minor on a dating website to
19   meet with him; to sneak out of her home at the age of 13,
20   to go to a motel room with him and engage in a night of
21   sex.  He also took pornographic photographs of that minor
22   child.
23         I don't know what else we need to say about the
24   seriousness of the offense and the nature and
25   circumstances.  It's very serious.  And, obviously, the

guidelines reflect the fact that significant and

substantial punishment is warranted.

There are also significant factors stemming from

Mr. Rice's history and characteristics.  In particular, his

criminal history.  He has several convictions and offenses,

but most concerning for the Court are those that involve

possession of firearms, resisting arrest and other acts of

authority by law enforcement.

And I find it noteworthy that in 2016, which was

just six years ago, he was convicted of resisting arrest

and unlawful possession of a firearm.  And during this

offense, Mr. Rice actually reached into his pocket and

retrieved a loaded gun while being handcuffed by law

enforcement.

So, why is that significant?  Because I think there

is a -- an indication of a combination of defiance and

propensity for violence and firearms in Mr. Rice's criminal

history which is concerning, troubling, and significant.

All of this goes to the objectives of sentencing.

And what are the goals of sentencing given all of these

factors?

Deterrence is one sentencing goal or objective that

the Court is required to consider.  That is, specific

deterrence for Mr. Rice.  What sentence could the Court

impose that would deter Mr. Rice from further criminal

conduct?

The Court considers specific deterrence in every case. But the truth of the matter is, there is no realistic expectation of specific deterrence in every case. Some people just simply can't be deterred no matter what the sentence is, and Mr. Rice is one of those people.

So, I do not believe that deterring Mr. Rice from future criminal conduct is a realistic goal for any sentence this Court could impose. I do believe that general deterrence is realistic. In other words, a sentence that would get the attention of others and deter them from similar criminal conduct. In other words, to know that the penalties for this -- these types of offenses is severe. And --

THE DEFENDANT: Not to interrupt but --

THE COURT: No. No. You cannot say a word. I'm speaking.

THE DEFENDANT: Can I sit?

THE COURT: Can you sit? No, you need to stand. Are you physically unable to stand?

THE DEFENDANT: It hurts, ma'am.

THE COURT: Then you may sit.

THE DEFENDANT: Thank you.

THE COURT: So, as far as promoting a respect for the law? There is no question that for some time Mr. Rice

has demonstrated that he has a total disregard for the law. And once again, sadly, I don't think any sentence I impose is going to change that.

So, for me, the relevant sentencing factors here are just punishment. And even given the nature of Mr. Rice's conduct, the seriousness of his offense, the total lack of remorse, does not necessarily lead the Court to the conclusion that maximum punishment is the only punishment here. But it is a consideration.

The most important objective of sentencing in this case, obviously, is the need to protect the public and, in particular, children from future crimes by Mr. Rice.

So, the calculated guidelines in this case is life. And that's a tough sentence for any Court to impose under any circumstances, but I can't say that it would be an inappropriate sentence in this case.

The Government, however, has recommended a sentence of 40 years which, frankly, as to Count 1 would be a downward variance in the guidelines.

Given again, frankly, the nature and circumstances of this offense, the impact on the victim from the offense itself all the way through having to sit up in this witness stand and testify as to what occurred on the night of the offense, and Mr. Rice's demonstrated total lack of regard for the law and lack of remorse, I believe a sentence of 50

1    years is appropriate and warranted in this case.

2          And so, having considered all of the information in

3    the presentence report, including guideline computations

4    and factors set forth in 18 U.S.C., Section 3553(a), and

5    pursuant to the Sentencing Reform Act of 1984, it is the

6    judgment of the Court that the defendant Earl G. Rice,

7    Jr., is hereby committed to the custody of the Bureau of

8    Prisons to be imprisoned for a term of 50 years on Count 1,

9    and a term of 30 years or 360 months on Counts 2 and 3, to

10   be served concurrently.

11         It is ordered that the defendant shall pay to the

12   United States a Special Assessment of 300 dollars, which is

13   100 dollars per count.  And that Special Assessment is

14   payable through the Clerk of the United States District

15   Court.

16         The defendant does appear to be indigent and does

17   not have the ability to pay the additional 5,000-dollar

18   Special Assessment under 18 U.S.C., Section 3014.

19         I also note that restitution is not being sought by

20   the victim in this case.

21         Because the financial penalties do exceed 100

22   dollars, this defendant shall notify the United States

23   Attorney for this district within 30 days of any change of

24   name, residence, or mailing address until his financial

25   penalties are paid in full.

In addition to the Special Assessment, the Court is also imposing a fine of 300 dollars, which is 100 dollars on each count.

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be paid in equal monthly installments of 25 dollars or 10 percent of his net monthly income, whichever is greater.

This defendant shall pay any financial penalty that is imposed by this judgment and remains unpaid at the commencement of the term of supervised release.

Should this defendant be released from imprisonment, he shall be placed on supervised release for life on each count, to run concurrently. Again, the justification is based on all of the factors that I noted and the obvious need to monitor any reintegration into the community of Mr. Rice, should he be released.

In addition to the sentence imposed, the defendant shall forfeit his interest in the following property to the United States:

A Nokia Lumia 635 cellular phone. I have noted the serial number before on the record and it will appear in the Judgment, as well as a Nokia 6350 cellular phone. Same thing.

As it relates to supervised release. While on supervised release, Mr. Rice shall be subject to and be

required to comply with the Conditions of Supervision ordered by this Court. Those Conditions are in the Presentence Investigation Report that was in fact provided to Mr. Rice in advance of the sentencing proceeding.

Mr. Rice, you have the right to have me read those Conditions of Supervision in open court this morning. You may also waive the reading of those Conditions.

Are you requesting that I read the Terms and Conditions of Supervised Release?

THE DEFENDANT: No.

THE COURT: Okay. You waive that right?

THE DEFENDANT: It goes to what I said before.

THE COURT: No. No. It doesn't go to what you said. It goes to whether or not you waive your right to have me read the Terms and Conditions of Supervised Release or you request that I read them.

THE DEFENDANT: I'm not requesting that you read them.

THE COURT: Okay. The record should reflect that Mr. Rice has knowingly, voluntarily, and competently waived his right to have me read the Conditions of Supervision in open court.

Miss Burns, does the Government request any further explanation regarding my consideration of the statutory factors set forth in 18 U.S.C., Section 3553(a)?

1    MS. BURNS:  No, Your Honor.

2    THE COURT:  Mr. Rice, do you request any further

3    elaboration regarding the sentence I impose and my

4    consideration of the factors set forth at 18 U.S.C.,

5    Section 3553(a)?

6    THE DEFENDANT:  No, ma'am.  But I hope to get that

7    and a copy of a transcript of this proceedings.  Will I be

8    able -- will I be able to?

9    THE COURT:  I will let you know.  We're going to

10   talk about what you -- the requests you can make as far as

11   a transcript and for purposes of appeal.  We'll get there

12   in a second.

13   THE DEFENDANT:  Okay.

14   THE COURT:  But my question is, do you want any

15   further explanation at this time?

16   THE DEFENDANT:  Pardon -- would you say that again,

17   please?

18   THE COURT:  My question is, do you request any

19   further explanation of the sentence and my consideration of

20   those factors at this time?

21   THE DEFENDANT:  No, I don't request.

22   THE COURT:  Okay.  So, let's talk about your

23   appeal.

24   Mr. Rice, you do have a right to appeal your

25   conviction if you believe that your conviction was some --

there was some fundamental defect in the proceedings.  You
are also -- you also have a statutory right to appeal the
sentence itself, if you believe the sentence that I just
imposed is contrary to the law.

If you intend to appeal, sir, you must file a
Notice of Appeal within 14 days after the Judgment is
entered in this case.

If you cannot afford the services of an attorney
and wish to have an attorney to assist you in your appeal,
one will be appointed for you.

If you cannot afford it, a transcript of the record
in this case will be prepared for appeal purposes and that
would be at the Government's expense.

And if you make the request, the Clerk of Court
will prepare and file a Notice of Appeal on your behalf.

Do you understand that, sir?

THE DEFENDANT:  Yes.

THE COURT:  Anything else, Miss Burns?

MS. BURNS:  I don't believe so, Your Honor.

THE COURT:  Anything else, Mr. Rice?

THE DEFENDANT:  No, ma'am.

THE COURT:  There being nothing further, this
defendant is remanded to the custody of the United States
Marshal.  We are in recess.  Thank you.

(Court adjourned at 10:12.)

1               <u>REPORTER'S CERTIFICATE</u>

2       I, Christine Dohack LaBuwi, RDR, CRR, Official

3  Court Reporter for the U.S. District Court, Southern

4  District of Illinois, do hereby certify that I reported

5  with mechanical stenography the proceedings contained in

6  pages 1-29; and that the same is a full, true, correct and

7  complete transcript from the record of proceedings in the

8  above-entitled matter.

9

10          DATED this 4th day of April, 2022,

11

12             *s/Christine Dohack LaBuwi, RDR, CRR*

13            _____
               Christine Dohack LaBuwi, RDR, CRR

14

15

16

17

18

19

20

21

22

23

24

25